IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEMONT MABLES, *et al.*,   )<br>                              )<br>    Plaintiffs,        )<br>                              )     No. 08 CV 2216<br>v.                           )<br>                              )     Judge Lindberg<br>INDYMAC BANK, F.S.B.,  )<br>                              )<br>    Defendant.       )<br>                              ) | |

### INDYMAC BANK, F.S.B.'S MOTION TO TRANSFER

Pursuant to 28 U.S.C. § 1404(a), defendant, Indymac Bank, F.S.B. ("Indymac"), moves to transfer this action to the United States District Court for the Central District of California, and in support thereof states as follows:

1. This action should be transferred to the Central District of California in the interests of justice, and for the convenience of the parties and witnesses. *See Timebase Pty Ltd. v. Thomson Corp.*, No. 07 C 460, 2007 WL 772946, at *2 (N.D. Ill. Mar. 9, 2007) (Lindberg, J.) (Exhibit 1). Venue is proper in the Central District.

2. Plaintiffs and their attorneys have engaged in improper forum shopping, filing this case and then immediately dismissing a nearly identical suit previously maintained in the Central District of California, *Ulloa v. Indymac Bank*, which was pending before Judge Steven Wilson. Allowing such gamesmanship to succeed is not in the interests of justice. *See, e.g., Madani v. Shell Oil Co.*, 2008-1 Trade Cas. (CCH) P76,054, 2008 WL 268986 (C.D. Cal. 2008) (criticizing another plaintiffs' counsel for nearly the identical conduct) (Exhibit 2).

3. As further grounds for this motion, Indymac refers to and incorporates by reference its memorandum in support of this motion, filed concurrently.

WHEREFORE, defendant, Indymac Bank, F.S.B., respectfully requests that the Court transfer this action to the Central District of California pursuant to 28 U.S.C. § 1404(a), and that it award Indymac such other and further relief as the Court deems just and proper.

Dated: April 21, 2008

Respectfully submitted,

**INDYMAC BANK, F.S.B.**

By: s/ Richard E. Gottlieb
Richard E. Gottlieb (rgottlieb@dykema.com)
Todd Gale (tgale@dykema.com)
Renee L. Zipprich (rzipprich@dykema.com)
DYKEMA GOSSETT PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
Phone: 312-876-1700
Fax:    312-627-2302

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2008, I electronically filed the foregoing Motion to Transfer with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

>Albert F. Hofeld, Jr. (al@alhofeldlaw.com)
>Marvin A. Miller (mmiller@millerlawllc.com)

s/ Irina V. Frye

CHICAGO\2442587.3
ID\ADL

# EXHIBIT 1



Slip Copy    Page 1
Slip Copy, 2007 WL 772946 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 772946)**

**CTimebase** Pty Ltd. v. **Thomson** Corp.
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
**TIMEBASE** PTY LTD., Plaintiff,
v.
The **THOMSON** CORPORATION, Defendant.
**No. 07 C 460.**

March 9, 2007.

Joseph Nevi Hosteny, III, Arthur Anthony Gasey, Niro, Scavone, Haller & Niro, Ltd., Chicago, IL, for Plaintiff.
Barry F. Irwin, Kirkland & Ellis LLP, Chicago, IL, Calvin L. Litsey, Chad M. Drown, David J.F. Gross, Faegre & Benson LLP, Minneapolis, MN, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

GEORGE W. LINDBERG, Senior U.S. District Judge.

**\*1** Defendant The Thomson Corp. ("Thomson") [FN1] moves this court pursuant to 28 U.S.C. § 1404(a) to transfer jurisdiction of this case to the United States District Court of Minnesota. For the reasons set forth below, the motion is granted.

> FN1. In a footnote, Thomson states that it is not the proper defendant to this suit and that plaintiff should have named West Publishing Corp. and West Services, Inc. as defendants. This issue is not before the court and was not briefed by the parties.

### I. RELEVANT FACTS

Plaintiff Timebase Pty Ltd. ("Timebase") is an Australian company, with its principal place of business in Sydney, Australia. Timebase owns, by assignment, United States Patent No. 6,233,592 (the "'592 patent") and has sued Thomson pursuant to 35 U.S.C. § 271 for alleged infringement of that patent. Thomson is a Canadian corporation that sells publishing services and products throughout the United States, including both the Northern District of Illinois and the District of Minnesota. In its complaint, Timebase does not specify which Thomson product(s) allegedly infringes the '592 patent.

In its motion to transfer, Thomson takes the position that this suit involves its PastStat Locator product because that is the product Timebase identified in the parties' pre-suit discussions. The PastStat Locator is a component of Westlaw.com, an online research tool available nationwide. In its response brief to the motion to transfer, Timebase identifies the PastStat Locator, Graphical Statutes and RegulationsPlus products, which are all components of Westlaw.com, as allegedly infringing the '592 patent. However, Timebase does not argue that the inclusion of the Graphical Statutes and Regulations Plus products in the suit alters the facts relevant to the resolution of this motion. Therefore, for purposes of this motion, the court will limit its analysis to the PastStat Locator. This is appropriate because Timebase failed to identify the alleged infringing product(s) in its complaint, Thomson limited the analysis in its motion to transfer to the PastStat Locator, and the relevant facts are the same regardless of whether the suit is limited to the PastStat Locator, or also includes the other two Westlaw.com components.

The research, design and development of the PastStat Locator occurred in Minnesota. Further, the associated research, design and development documentation and the central hardware and software necessary to operate the PastStat Locator are located there. Although PastStat Locator's necessary hardware and software are physically located in Minnesota, the product itself is an online tool that is marketed, sold and used throughout the United States. Thomson's party and non-party witnesses are also in Minnesota. Thomson identified eighteen relevant witnesses, fifteen employees and three former employees, who reside in the Minneapolis/St. Paul metropolitan area. Timebase identified seven additional possible witnesses for Thomson. Six of them live in Minnesota, maintain a residence in Minnesota, or live within the subpoena power of a Minnesota federal court.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 2
Slip Copy, 2007 WL 772946 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 772946)**

Timebase does not have any witnesses who reside in the United States. There is also no evidence that Timebase has relevant documentation, or other evidence located anywhere in the United States, much less the Northern District of Illinois. Finally, representatives from Timebase traveled to Minnesota, not the Northern District of Illinois, to conduct pre-suit discussions with representatives from Thomson.

## II. LEGAL ANALYSIS

**\*2** Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In other words, a transfer is appropriate if: (1) venue is proper in both the transferor and transferee courts; (2) transfer will serve the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. *See Boyd v. Snyder, 44 F.Supp.2d 966, 968 (N.D.Ill.1999).* Whether to transfer a case is within the sound discretion of the transferor court. *Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219-20 (7th Cir.1986).* The party requesting transfer bears the burden of demonstrating that the transferee forum is clearly more convenient than the transferor forum. *Id.*

Both parties concede that venue is proper in this court and the District of Minnesota. Therefore, the court proceeds directly to an analysis of the second factor, whether transfer will serve the convenience of the parties and witnesses. This factor weighs strongly in favor of transfer. In accessing the convenience of the parties and witnesses, the Court considers five sub-factors. *See Hanley v. Omarc, Inc., 6 F.Supp.2d 770, 774 (N.D.Ill.1998).* First, the court looks to the plaintiffs' chosen forum, which is normally accorded deference. In this case, the deference is minimal because plaintiff does not reside in the Northern District of Illinois. *Childress v. Ford Motor Co., 03 C 3656, 2003 WL 23518380 at \*3 (N.D.Ill.Dec.17, 2003).*

The next factor, the situs of the material events, is irrelevant because this is a patent case. *See Sitrick v. FreeHand Systems, Inc., No. 02 C 1568, 2003 WL 1581741, at \*3 (N.D.Ill. Mar.27, 2003).* The third factor, the convenience of the witnesses, strongly favors transfer. There is not a single relevant witness located in the Northern District of Illinois. In fact, all of Timebase's witnesses reside outside of the United States. If this case proceeds to trial, regardless of the forum, each of Timebase's witnesses will have to travel internationally. For purposes of convenience, whether the their ultimate destination is Chicago or Minneapolis does not appear material. Alternatively, all but one of the twenty-five relevant Thomson witnesses, as identified by both Timebase and Thomson, live in Minnesota, maintain a residence in Minnesota, or live within the subpoena power of a Minnesota federal court. Further, at least three of those witnesses are non-party witnesses who would be within the subpoena power of a Minnesota federal court, but would not be within the subpoena power of this court. Minnesota is clearly more convenient for Thomson's relevant witnesses and is not any less convenient for Timebase's witnesses than the Northern District of Illinois.

The last two sub-factors, the relative ease of access to sources of proof in both forums and the convenience of the parties in litigating in each respective forum, also weigh in favor of transfer. No sources of proof are located in Illinois and all of Thomson's evidence is in Minnesota. Thomson's relevant research, testing and design documentation is in Minnesota, along with the central hardware and software necessary to operate the PastStat Locator. Further, Thomson's employees and the people most knowledgeable about this case are located in Minnesota. If this case remains in the Northern District of Illinois, Thomson would have to transport its sources of proof outside of Minnesota.

**\*3** Timebase will have to transport its sources of proof regardless of the forum. All of Timebase's sources of proof are located outside of the United States, presumably in Australia and Europe, although Timebase did not provide the exact location. Timebase's counsel is located in the Northern District of Illinois, however, the court does not consider the convenience of a party's counsel in a § 1404(a) transfer analysis. *See Chicago, Rock Island & Pac. R.R. Co. v. Igoe, 220 F.2d 299, 304 (7th Cir.1955); China Industries (USA), Inc. v. New Holland Tire, Inc., 2006 WL 2290975 at 2 (N.D.Ill.2006).* There is no evidence that litigation before this court, as opposed to a court in Minnesota, would be more convenient for Timebase. However, there is substantial evidence that it would be more convenient for Thomson to litigate this case in Minnesota.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Finally, the court must consider whether transfer is in the interest of justice. The interest of justice component of a § 1404(a) analysis concerns the "efficient administration of the court system."*Coffey, 796 F.2d at 221*. In making this determination, the court considers each proposed forum court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of litigating the case in each locale. *See Amoco Oil Co. v. Mobil Oil Corp., 90 F.Supp .2d 958, 961 (N.D.Ill.2000)*. Patent infringement is a question of federal law. This court and the District of Minnesota are equally familiar and capable of deciding questions of federal law, thus this factor is neutral to the § 1404(a) analysis.

Next, the court considers which proposed district will provide the parties with the fastest progression to trial. The two most relevant statistics are the median months from filing to disposition of a case and the median months from filing to trial. *Amoco, 90 F.Supp.2d at 962*. In 2005, the median months from filing to disposition was 7.5 for the District of Minnesota and 6.9 for the Northern District of Illinois. In 2006, that statistic increased dramatically to 23.8 in the District of Minnesota and remained relatively stable at 6.5 in this court. That 2006 statistic was an aberration for the District of Minnesota, caused by the termination of a large multi-district litigation. The median months from filing to trial in 2005 was 23 months in the District of Minnesota and 27 in the Northern District of Illinois. That statistic was 26.4 for both districts in 2006. The relevant statistics for both forums are similar, however, they are slightly more favorable in this court, thus minimally weighing against transfer.

The last interest of justice related factor, the desirability of litigating the case in each proposed forum, favors transfer. This case has absolutely no relevant connection to this district. Not a single party, witness, or source of proof is located in the Northern District of Illinois. Further, the PastStat Locator is an online tool that is marketed, sold and used throughout the country. The fact that it is marketed, sold and used in this district does not weigh against transfer because that fact is true of every other federal district in the United States. Alternatively, this case has considerable relevance to the District of Minnesota. Not only is the PastStat Locator marketed, sold and used there, but Thomson's employees, relevant witnesses and sources of proof are located in Minnesota. Additionally, the PastStat Locator was created in Minnesota and the central hardware and software necessary for its operation are there.

### *III. CONCLUSION*

**\*4** On these facts, the court finds that transfer to Minnesota pursuant to § 1404(a) is appropriate. The lack of any relevant connection between this district and this litigation and the presence of a strong connection to the District of Minnesota strongly outweighs the minimal deference accorded Timebase's choice of forum and the fact that this court may provide for a slightly faster disposition of the case.

ORDERED: Defendant's motion to transfer venue to the District of Minnesota [10] is granted.

N.D.Ill.,2007.
Timebase Pty Ltd. v. Thomson Corp.
Slip Copy, 2007 WL 772946 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2



Slip Copy                                                                                                    Page 1
Slip Copy, 2008 WL 268986 (N.D.Cal.), 2008-1 Trade Cases P 76,054
**(Cite as: Slip Copy, 2008 WL 268986)**

**Madani** v. **Shell Oil** Co.
N.D.Cal.,2008.

United States District Court,N.D. California.
Mike M. **MADANI**, Plaintiff,
v.
**SHELL OIL** COMPANY, Defendant.
**No. C07-04296 MJJ.**

Jan. 30, 2008.

Bradley K. Beasley, Boesche McDermott LLP, Tulsa, OK, Daniel R. Shulman, Jeremy L. Johnson, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, MN, James M. Dombroski, Attorney at Law, Petaluma, CA, Jeffery Kenneth Perkins, Law Offices of Jeffrey K. Perkins, John Haslet Boone, Law Offices of John H. Boone, Joseph M. Alioto, Joseph Michelangelo Alioto, Jr., Alioto Law Firm, Richard Alexander Saveri, Saveri & Saveri Inc., San Francisco, CA, Thomas Paul Bleau, Los Angeles, CA, for Plaintiff.
Stuart Neil Senator, Munger Tolles & Olson, Los Angeles, CA, for Defendant.

**ORDER GRANTING DEFENDANTS' MOTION FOR TRANSFER OF VENUE**

MARTIN J. JENKINS, District Judge.

**INTRODUCTION**

*1 Before the Court is Defendants' Joint Motion For Transfer Of Venue. (Docket No. 23.)For the following reasons, the Court **GRANTS** the Motion.[FN1]

> FN1. Because the Court finds that, in the interests of justice, decisions on the merits of this case should be made by the United States District Court for the Central District of California, the Court does not reach or resolve Defendants' simultaneously-filed motion to dismiss. (Docket No. 26.)

**FACTUAL BACKGROUND**

In this action, twenty named plaintiffs seek to represent a class of persons similarly situated- approximately 25,000 Shell and Texaco branded dealers nationwide who purchased gasoline from January 1998 through October 2001 from either of two joint ventures, Equilon and Motiva, that Defendants formed. Plaintiffs contend that the formation of the two joint ventures violated Section 7 of the Clayton Act, and that Defendants' agreement to fix the price of Shell and Texaco gasoline sold by the joint ventures violated Section 1 of the Sherman Act under the Rule of Reason.

This is not, however, the first time that the Defendants' operation of the joint ventures has been challenged under the antitrust laws. The same counsel representing Plaintiffs in this action previously sought to represent a nearly identical nationwide class of Shell and Texaco branded dealers against the same Defendants in the *Dagher v. Saudi Refining, Inc.,* Case No. CV-99-06114 GHK, in the Central District of California.[FN2] In *Dagher,* the plaintiffs pursued a claim for *per se* illegal price fixing under Section 1 of the Sherman Act, but their counsel (the same counsel here) disavowed any reliance on a Rule of Reason claim for the same alleged misconduct.

> FN2. Plaintiffs in this action, however, have expressly excluded the named plaintiffs in the *Dagher* litigation from the putative class here.

After Judge King denied in part the defendants' motion to dismiss in *Dagher,* the parties engaged in considerable discovery. On cross-motions for summary judgment in 2002, Judge King granted summary judgment to the defendants, ruling that it was not *per se* illegal for a joint venture to set the selling price of its own gasoline. The Ninth Circuit reversed the ruling on *per se* illegality as to Shell and Texaco in 2004, but a unanimous Supreme Court reversed the Ninth Circuit in 2006 and upheld Judge King's grant of summary judgment.

Plaintiffs in this action, who were members of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-02216   Document 11-3   Filed 04/21/2008   Page 3 of 5

Slip Copy                                                                                                                                Page 2
Slip Copy, 2008 WL 268986 (N.D.Cal.), 2008-1 Trade Cases P 76,054
**(Cite as: Slip Copy, 2008 WL 268986)**

putative class that counsel sought to certify in *Dagher,* now seek to assert the very Rule of Reason claim that was disavowed by the plaintiffs in the *Dagher* action.

### LEGAL STANDARD

Defendants' motion to transfer venue to the Central District of California is governed by 28 U.S.C. § 1404(a), which provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."Ordinarily, a plaintiff's choice of forum is accorded substantial weight, and courts will not grant a motion under section 1404(a) unless the "convenience" or "justice" factors tip strongly in favor of transfer. *Florens Container v. Cho Yang Shipping,* 245 F.Supp.2d 1086, 1092 (N.D.Cal.2002); *see also Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986). A motion for transfer pursuant to section 1404(a) lies within the discretion of the Court. *See Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir.2000). The decision whether to grant such a motion turns on the facts of the particular case. *See id.*

### ANALYSIS

**\*2** There is no dispute that this action could have been brought in the Central District. The appropriateness of transfer, therefore, depends on the convenience of the parties and witnesses, and the interests of justice. "The question of which forum will better serve the interest of justice is of predominant importance on the question of transfer, and the factors involving convenience of parties and witnesses are in fact subordinate."*Wireless Consumers Alliance v. T-Mobile USA, Inc.,* 2003 WL 22387598 at \*4 (N.D.Cal. Oct.14, 2003).

**I. Convenience Factors.**

**A. Convenience Of The Litigants.**

The Court finds that retaining this litigation in this district, rather than transferring it, would be mildly more convenient for the litigants.

As Plaintiffs point out, several of the named plaintiffs reside in the Northern District, and therefore would find it more convenient to litigate the case here. "A lead plaintiff has important responsibilities in managing class actions."*Van Slyke v. Capital One Bank,* 503 F.Supp.2d 1353, 1363 (N.D.Cal.2007). The force of this argument is somewhat undercut by the fact that several of the named plaintiffs also reside in the Central District. Plaintiffs do not introduce any evidence that the named plaintiffs residing in the Northern District will play a larger role in the litigation than other named plaintiffs. Nonetheless, Plaintiffs' lead attorney also resides in this district, and one of the Defendants, Chevron, has its headquarters in the Northern District. Though the claim of any one plaintiff that a forum is appropriate merely because it is his home is considerably weakened when there are thousands of potential plaintiffs,[FN3] the Court nonetheless finds that the convenience of the parties mildly supports retaining the case in the Northern District.

> FN3.*See Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir.1987); *Hoefer v. U.S. Dep't of Commerce,* 2000 WL 890862 at \*2 (N.D.Cal. June 28, 2000); *cf. Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).

**B. Convenience of Third-Party Witnesses.**

As to convenience of third-party witnesses, Plaintiffs concede that this factor is neutral. Most witnesses would have to travel out-of-town to get to the courthouse, regardless of whether or not this case is transferred. *See Wireless Consumers Alliance,* 2003 WL 22387598 at \*4.

**II. Interests Of Justice.**

**A. Judicial Efficiency.**

The Court finds that concerns of judicial efficiency counsel strongly in favor of transfer. Judicial resources are conserved when an action is adjudicated by a court that has already "committed judicial resources to the contested issues and is familiar with the facts of the case."*Samsung Elec. Co.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-02216   Document 11-3   Filed 04/21/2008   Page 4 of 5

Slip Copy                                                                                                          Page 3
Slip Copy, 2008 WL 268986 (N.D.Cal.), 2008-1 Trade Cases P 76,054
**(Cite as: Slip Copy, 2008 WL 268986)**

*v. Rambus, Inc.,* 386 F.Supp.2d 708, 722 (E.D.Va.2005). Here, in the event of a transfer, the action would almost certainly be reassigned to Judge King under related case procedures. Judge King presided over *Dagher* for more than three years, issued detailed written orders regarding the merits of that case, and is presumably more familiar than this Court with underlying factual contentions that are common to both actions. Judge King is in the best position to determine substantive issues raised in the present litigation, including the threshold question, raised by Defendants' pending motion to dismiss, of whether the pendency of *Dagher* tolled what would otherwise be a statute of limitations bar on the present lawsuit.[FN4] Judge King will also be better positions to address downstream issues, including res judicata issues and the substantive merits of the claims. This Court, in contrast, would have to invest significant time and resources to reach a similar level of familiarity. The interests of justice therefore strongly support transfer here. *See Hoefer,* 2000 WL 890862 at *3 (transfer warranted to district where earlier action had been litigated because keeping case "would entail a significant waste of time and energy and would involve duplicative effort by this court"); *Wireless Consumers Alliance,* 2003 WL 22387598 at *5-6 (transfer warranted to district where earlier action had been litigated, to "avoid the risk of conflicting rulings" and to "save judicial resources").

> FN4. For example, Judge King is in a better position that this Court to analyze, for purposes of the class action tolling doctrine, whether counsel's express disclaimer of any Rule of Reason claim in the *Dagher* case put putative class members, including the named plaintiffs in this litigation, on notice that they needed to take steps to preserve their Rule of Reason claim. Judge King is also in a better position to calculate the exact amount of tolling, if any, available to Plaintiffs, based on the full *Dagher* record, which is not before this Court.

**\*3** The Court finds unpersuasive Plaintiffs' efforts to minimize the factual overlap between the *per se* claims brought in *Dagher* and the Rule of Reason claims brought here. While the legal theories may differ-and may require Plaintiffs to prove elements not at issue in the *Dagher* litigation-the underlying facts concerning the joint ventures and Defendants' conduct are largely the same.[FN5]

> FN5. The Court sees no reason to seriously entertain Plaintiffs' speculation that Judge King's memeory of the *Dagher* case has rapidly faded with the passage of time.

**B. Forum Shopping.**

The Court is persuaded, on this record, that there is a high likelihood that Plaintiffs' counsel are attempting to forum shop. The same counsel, seeking to represent a nearly identical class, filed a earlier lawsuit premised on the same allegedly unlawful activity in the Central District. After expressly disavowing the Rule of Reason claim, and then receiving unfavorable rulings from that Court, the same counsel now seek to assert a Rule of Reason claim in an action filed in this district. Plaintiffs filed the action in this district even though their tolling theory to overcome the statute of limitations bar depends on the pendency of the *Dagher* litigation. The Court can reasonably draw an inference from such conduct that Plaintiffs' counsel are engaged in forum-shopping. *See Alexander v. Franklin Res., Inc.,* 2007 WL 518859 at *4 (N.D.Cal. Feb.14, 2007). Although Plaintiffs have identified some connections that the Northern District has to the dispute, including the locations of defendant Chevron, of Plaintiffs' lead counsel, and of some of the alleged injuries, none of these connections were absent in the earlier *Dagher* litigation. Plaintiffs have not offered any satisfactory explanation for their decision to *change* their choice of forum when these factors have not changed.

Discouraging forum-shopping provides a strong reason to transfer this case to the Central District. *See Wireless Consumers Alliance,* 2003 WL 22387598 at *6 ("evidence of plaintiff's attempt to avoid a particular precedent from a particular judge weighs heavily in the context of [the interests of justice] prong and would often make the transfer of venue proper")."If there is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference ."*Williams v. Bowman,* 157 F.Supp.2d 1103, 1116 (N.D.Cal.2001). Accordingly, the Court finds that Plaintiffs' choice of forum is entitled to little or no deference here.

**CONCLUSION**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  Page 4
Slip Copy, 2008 WL 268986 (N.D.Cal.), 2008-1 Trade Cases P 76,054
**(Cite as: Slip Copy, 2008 WL 268986)**

Despite the slight benefit that litigating this matter would have for the convenience of the litigants, the judicial efficiency and forum-shopping considerations discussed above are more than sufficient to tip the scale, decisively, in favor of transfer. "[T]he 'interests of justice' consideration is the most important factor a court must consider, and may be decisive in a transfer motion even when all the other factors point the other way."*London & Hull Mar. Ins. Co. v. Eagle Pac. Ins. Co., 1996 WL 479013 at *3 (N.D.Cal. Aug.14, 1996)*. For the foregoing reasons, the Court **GRANTS** the motion and **ORDERS** the case transferred to the United States District Court for the Central District of California. The Clerk is **DIRECTED** to transfer this case, forthwith.

***4IT IS SO ORDERED.**

N.D.Cal.,2008.
Madani v. Shell Oil Co.
Slip Copy, 2008 WL 268986 (N.D.Cal.), 2008-1 Trade Cases P 76,054

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.